IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JERMAINE LATIMER MCKIVER,    )
                             )
        Petitioner,           )
                             )
        v.                    )         1:12CR71-1
                             )         1:13CV1091
UNITED STATES OF AMERICA,    )
                             )
        Respondent.           )

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This case comes before the undersigned United States Magistrate Judge following a hearing on Ground One of Petitioner's amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 27) ("Amended Section 2255 Motion").[1] For the reasons that follow, the Court should deny relief on that claim.

INTRODUCTION

This Court (per Chief United States District Judge William L. Osteen, Jr.) previously entered a Judgment against Petitioner imposing, inter alia, a prison term of 188 months, after his guilty plea to possessing a firearm as a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Docket Entry 19; see also Docket Entry 1 (Indictment); Docket Entry 14 (Plea Agreement); Docket Entry dated May 15, 2012 (documenting guilty plea); Docket Entry dated

---

[1] Parenthetical citations refer to Petitioner's criminal case.

Aug. 29, 2012 (documenting sentencing).) Petitioner did not appeal. (See Docket Entry 24, ¶ 8; Docket Entry 27, ¶ 8.) However, he did make collateral filings in this Court, including a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket Entry 24) and the instant Amended Section 2255 Motion (Docket Entry 27), as to which the United States responded (Docket Entry 29) and Petitioner replied (Docket Entry 31).

By prior Memorandum Opinion, the undersigned Magistrate Judge recommended that the Court deny Petitioner's claims, except Ground One of his instant Amended Section 2255 Motion, which alleges that his counsel "failed to file an appeal for [him] after [he] informed [his counsel] to challenge to [sic] prior convictions that was [sic] used to enhance [his] sentence" (Docket Entry 27, ¶ 12(Ground One)(a)). (See Docket Entry 32 at 15-16.) As to that failure-to-appeal claim, the undersigned Magistrate Judge deferred action, pending an evidentiary hearing. (See id.) That hearing now has occurred. (See Docket Entry 35.) Based on the evidence presented at that hearing and a review of the entire record, the Court should deny Ground One of the instant Amended Section 2255 Motion.[2]

---

[2] The United States initially raised a statute of limitations defense to Ground One of the instant Amended Section 2255 Motion, but the undersigned Magistrate Judge also deferred consideration of that defense pending further development of facts relevant to timeliness under 28 U.S.C. § 2255(f)(4). (See Docket Entry 32 at 9-11.) The United States did not pursue the limitations defense at the hearing. (See Docket Entry 35 at 4, 38-40.)

2

DISCUSSION

As noted above, Ground One of Petitioner's instant Amended Section 2255 Motion asserts that his counsel provided ineffective assistance by failing to appeal despite Petitioner's instruction to do so. (See Docket Entry 27, ¶ 12(Ground One)(a).) In response, Petitioner's former counsel, John A. Dusenbury, Jr., swore by affidavit that, after sentencing, he "discussed with [Petitioner] his right to appeal from the [C]ourt's sentence. [Petitioner] informed [Mr. Dusenbury] that he did <u>not</u> wish to file a notice of appeal on his behalf." (Docket Entry 29-5, ¶ 15 (emphasis added).)

At the start of the evidentiary hearing, Petitioner (through his new appointed counsel) confirmed that Ground One of the instant Amended Section 2255 Motion asserted a claim based only on Mr. Dusenbury's failure to file a notice of appeal as instructed (not any failure by Mr. Dusenbury to consult with Petitioner about whether to file an appeal). (See Docket Entry 35 at 3-4.)[3] Petitioner then took the stand. (See id. at 4.) On direct examination, he testified that, "after sentencing, [he] asked [Mr.

---

[3] Even if Ground One of the instant Amended Section 2255 Motion presented a "failure-to-consult" claim, the record would foreclose any relief. First, elsewhere in his instant Amended Section 2255 Motion, Petitioner expressly averred that he and Mr. Dusenbury "consulted." (Docket Entry 27, ¶ 12(Ground Two)(c)(7).) Second, during the evidentiary hearing, Petitioner acknowledged that Mr. Dusenbury consulted with him about an appeal. (See Docket Entry 35 at 6.) Finally, Mr. Dusenbury credibly testified that he consulted with Petitioner about an appeal. (See id. at 22-24.)

3

Dusenbury] . . . what is the appeal process." (Id. at 5.) According to Petitioner, Mr. Dusenbury "explained it to [Petitioner], and then [Petitioner] noted that seeing that it is [his] right for an appeal, [he] would like to bring forth the appeal on the ACCA [Armed Career Criminal Act, 18 U.S.C. § 924(e)] enhancement." (Id. at 6.) Petitioner averred that, in response, Mr. Dusenbury "said, okay, he will notify [Petitioner]." (Id.)

When Petitioner's new appointed counsel asked whether Petitioner "ever ha[d] a conversation with [Mr. Dusenbury] where he indicated that the result would be the same," Petitioner answered: "Yes. . . . [Mr. Dusenbury] said, why would [Petitioner] like to have [an appeal] seeing that the outcome would be the same." (Id.) Petitioner also conceded that he "felt that by [Mr. Dusenbury] stating that, it wasn't necessary for [Petitioner] to even get [an appeal] seeing that . . . the facts was already given, that it couldn't be changed." (Id.) Petitioner maintained that he, "nonetheless, ask[ed] [Mr. Dusenbury] to appeal[.]" (Id.) Finally, Petitioner testified that, when several months passed without further word from Mr. Dusenbury, he began writing Mr. Dusenbury (ultimately sending several letters) and asked his mother to call Mr. Dusenbury, but received no response. (Id. at 7-8.)[4]

---

[4] Petitioner's mother subsequently testified that Petitioner "called [her] a couple of times upset because he hadn't heard anything from [Mr. Dusenbury] and asked [her] if [she] would call (continued...)

"[I]n approximately November of 2013, or about a year after [his] sentencing," Petitioner wrote the Court stating: "'I have not been able to contact my attorney to address the issue in my case, the change in law concerning the enhancements of the *Simmons* case in 2012 and the *Davis* case decided in 2013[.]'" (Id. at 8.)

The United States thereafter called Mr. Dusenbury, who testified that:

1) Mr. Dusenbury has 34 years of experience representing federal criminal defendants (see id. at 29);

---

⁴(...continued)
[Mr. Dusenbury] to see what was going on." (Docket Entry 35 at 15.) According to Petitioner's mother, she ultimately "spoke to [Mr. Dusenbury] and told him who [she] was and [that Petitioner] had told [her] to ask [Mr. Dusenbury] . . . what was going on with [Petitioner's] appeal . . . ." (Id.) She continued: "Mr. Dusenbury . . . said that most of these young guys, once they are sentenced, they don't realize that we are no longer their lawyer. So [Mr. Dusenbury said Petitioner] need[ed] to contact [Mr. Dusenbury] directly if [Petitioner] need[ed Mr. Dusenbury] to do anything for [Petitioner]." (Id. at 15-16.) Mr. Dusenbury testified that he did have a telephone conversation with Petitioner's mother some months after sentencing, but that "had [the subject of an appeal] come up, [he was] confident that [he] would have independently investigated to determine whether, in fact, [h]e had filed an appeal and . . . where the case stood with respect to the Court of Appeals." (Id. at 27; see also id. at 27-28 ("[M]y recollection is that [Petitioner's mother] was less than clear as to exactly what it was that [Petitioner] wanted . . . and I seem to recall telling her that probably the most effective way would be for him to communicate with me directly, and . . . the only letter I received in my file from [Petitioner] predated the entry of the judgment. It had to do with whether his state charges had been dismissed or not."), 32-33 ("The only times when I can recall giving an answer like ['I am not _____'s lawyer anymore"] would be years after my representation ended.").)

5

2) Mr. Dusenbury knows that "if a client requests an appeal be filed, then [Mr. Dusenbury] ha[s] a duty to file it"(id.);

3) Mr. Dusenbury follows a practice of "consult[ing] with [clients] immediately after sentencing, or as soon after sentencing as an opportunity presents itself, to find out what their preference is," "[i]f they indicate a desire to file an appeal, [he] notif[ies] [his] secretary," the secretary "make[s] a note of it; and then when the judgment is entered, the appeal is filed, and a copy of the notice is sent to the client," and Mr. Dusenbury "make[s] a time entry, conference or conversation, with the secretary regarding notice of appeal" (id. at 29-31);

4) Mr. Dusenbury's records confirm that, immediately after sentencing, he met with Petitioner and that "the sole purpose of that meeting was to discuss filing an appeal" (id. at 22-23; see also id. at 23 ("I told him first about the nature of an appeal . . . . I explained that . . . what an appeal entailed was an opportunity to ask another court to correct legal errors that were made by the judge in imposing the sentence in this case, and . . . not having challenged any of the issues pertaining to guilt or sentencing by way of a motion or pretrial motion and not having filed any objections to the presentence report, that there did not appear to be any meritorious basis for an appeal."));

5) Mr. Dusenbury's "best recollection is that [Petitioner] accepted [Mr. Dusenbury's] advice [that no basis for appeal

6

existed], and there was no further discussion about an appeal" (id. at 24; see also id. ("Q Did [Petitioner] actually ask for you to file an appeal? A . . . [T]he answer to the question is, no, to the best of my recollection; and upon reviewing the file in preparation for this hearing, I don't see anything that suggests to the contrary."));

6) Mr. Dusenbury's records do not reflect that, after meeting with Petitioner, Mr. Dusenbury called his secretary to have him/her note Petitioner's desire to appeal, but instead those records "specifically indicate[ that Mr. Dusenbury had] a conversation with [Petitioner] regarding an appeal and closed the file on that very same day, which is not customary [and which] . . . reinforces [Mr. Dusenbury's] belief that in [their] 15-, 20-minute conversation post-sentencing [Petitioner] said he did not want to appeal" (id. at 31); and

7) Mr. Dusenbury would have appealed if Petitioner had so directed, even if Mr. Dusenbury believed the appeal had no merit, as he has often done in other cases (see id. at 32).

"Once [a federal criminal defendant] unequivocally instruct[s] his attorney to file a timely notice of appeal, his attorney [i]s under an obligation to do so." United States v. Poindexter, 492 F.3d 263, 269 (4th Cir. 2007); see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in

7

a manner that is professionally unreasonable."); id. at 485 ("[A] defendant, by instructing counsel to perfect an appeal, objectively indicate[s] his intent to appeal and [i]s entitled to a new appeal without any further showing."). As described above, a conflict exists in the evidence as to whether Petitioner "unequivocally instruct[ed] his attorney to file a timely notice of appeal," Poindexter, 492 F.3d at 269. The Court should credit Mr. Dusenbury's testimony denying any such instruction over Petitioner's testimony to the contrary.

As an initial matter, "there is no evidence that [Petitioner's former attorney] had any motive to refuse any request by [him] to file an appeal . . . ." Diaz v. United States, Nos. 7:09CR100D, 7:11CV43D, 2014 WL 7384974, at *6 (E.D.N.C. Dec. 29, 2014) (unpublished). Petitioner, however, "had a strong incentive to lie . . . about his purported request for an appeal. That claim represents perhaps the only remaining avenue open to [him] to escape service of [his] prison term . . . ." Id. at *8.

Further, Mr. Dusenbury relied on contemporaneous records and standard practices to inform his testimony, possesses substantial experience as a criminal defense attorney, understands his obligation to appeal if so directed, and testified in a straight-forward manner about his interactions with Petitioner (describing events one reasonably would have expected under the circumstances presented). Those considerations support crediting Mr. Dusenbury's

8

testimony. See id. at *5. Petitioner, in contrast, admitted that, after talking with Mr. Dusenbury, Petitioner understood that his appeal would achieve nothing and offered no rationale for why he nonetheless would have directed Mr. Dusenbury to appeal. Finally, Petitioner's post-judgment letter to the Court did not make any reference to any alleged failure by Mr. Dusenbury to file notice of appeal; instead, said letter focused on Petitioner's apparent interest in pursuing some type of collateral claim based on what Petitioner perceived as changes in the law. Simply put, Petitioner's testimony lacks credibility.

## CONCLUSION

Petitioner has not established entitlement to relief on his claim of ineffective assistance counsel due to failure to appeal.

**IT IS THEREFORE RECOMMENDED** that the failure-to-appeal claim set forth in Ground One of Petitioner's instant Amended Section 2255 Motion (Docket Entry 27) be denied without issuance of a certificate of appealability based on the following findings of fact and/or conclusions of law:

1) in Ground One of the instant Amended Section 2255 Motion, Petitioner asserts a claim for ineffective assistance of counsel only for failure to file a timely notice of appeal when instructed to do so and does not state a claim for ineffective assistance of counsel for failure to consult about whether to pursue an appeal;

9

2) Petitioner did <u>not</u> unequivocally instruct his counsel to file a timely notice of appeal and thus Petitioner's failure-to-appeal, ineffective assistance of counsel claim lacks merit; and

3) if Ground One of the instant Amended Section 2255 Motion had asserted a failure-to-consult, ineffective assistance of counsel claim, that claim would fail because Petitioner has conceded that his former counsel consulted with him about whether to pursue an appeal.

/s/ L. Patrick Auld<br>**L. Patrick Auld**<br>**United States Magistrate Judge**

September 1, 2015